EXHIBIT 2 TO *MARTINEZ* REPORT

DECLARATION OF KENNON TUBBS, M.D.

DAVID N. WOLF (6688)
Assistant Utah Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
e-mail dnwolf@utah.gov

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DAMON CRIST,<br><br>    Plaintiff,<br>v.<br><br>DR. KENNON TUBBS, et al.,<br><br>    Defendants. | **DECLARATION OF KENNON TUBBS, M.D.**<br><br><br><br>Case No.  2:10cv00675<br><br>Judge Ted Stewart |

KENNON TUBBS, M.D., being first duly sworn, deposes and states as follows:

    1.    I am an adult resident of the United States of America and of the State of Utah,

and I am over the age of eighteen (18) years.

    2.    I am competent to testify to the matters stated herein.

3.      I am a Medical Doctor and licensed to practice medicine in the State of Utah.  I obtained my medical degree from Georgetown University School of Medicine from 1992-1996. I fulfilled my three (3) year residency requirement at Utah Valley Family Practice in Provo, Utah and became Board Certified by the American Academy of Family Physicians in 1999.

4.  I maintain a private medical practice in Draper, Utah.  I am also employed by the Utah Department of Corrections ("DOC") as a part-time physician at the Utah State Prison ("USP") in Draper, Utah.

5.      I am personally acquainted with plaintiff, Damon Crist, as I have treated and/or otherwise diagnosed plaintiff on several occasions at the USP.

6.      The medical providers at the CUCF are required, by Utah Controlled Substance Act R157-37-603, to ensure we do not enable inmates to abuse controlled substances and other drugs.

7.      I have reviewed Plaintiff's medical records which are numbered M-Track 000001 through 000537.

8.      The following statements are based on my review of the records and on my memory of treating Plaintiff Crist.

9.      Mr. Crist was a high school baseball player and attempted to pursue a career as a pitcher.

10.      Mr. Crist did in fact play AA baseball. Crist injured his back at the age of 20 while playing baseball.

11.      Crist was placed on narcotics (ie. Lortab, Percocet and Oxycontin) by a physician to help manage his pain.

2

12.     Crist was on pain medication for an unknown period of time and developed an addiction to his pain medication.

13.     When his physician discontinued his pain medication, Crist turned to heroin and methamphetamine. (Crist M-Track 000527)

14.     Because of his drug use, Crist was required to complete a drug treatment program at Promontory Conquest.

15.     During his stay at Promontory Conquest, I witnessed Crist playing softball and other sporting activities on numerous occasions.

16.     Crist has continually complained of back pain and has demanded expensive and exhaustive workups of his back complaints.

17.     Crist has had minimal MRI findings in his lumbar spine but it does not seem to impair his sporting activities or his daily lifestyle (Crist Hard Chart 000056 and Crist M-Track 000150-152, 000192, 000207, 000211, 000239, 0000254, 000260, 000271, 000283, 000353, 000371, 000409, 000419).

18.     On February 20, 2009, Crist came to the infirmary and informed me that one of the med techs did not provide him with a proper does of Tramadol (also known as Ultram).  He had also requested an increase in the dosage of Ultram.  (Crist M-Track 000287)  Because Crist continually asked for higher dosage, and because of Crist's prior history of narcotics abuse, I believed that he may be becoming dependent on the medication.   I reviewed his medical records with him, and noted that the current dosage should have been sufficient to manage the pain evidenced from his MRI.  At this time, I had also been told by prison officers that Tramadol was

being sold on the "black market" in the drug rehab building and had requested that I only prescribe it to the neediest of patients. In my opinion, Crist did not fall into that category.

19.     Because of Crist's history of narcotics abuse, and because I was concerned about Crist's potential dependency and misuse of his medication, I discontinued Crist's Tramadol.  I did not discontinue Tramadol because of any threatened grievance or lawsuit.  At the time I ordered Tramadol discontinued, I had no knowledge of any filed or pending lawsuit against my med techs or me.

20.     Crist became irate when I discontinued his medication. He was derogatory, insulting and threatening.

21.     When he left my office, Crist understood that he was no longer to take Tramadol for pain management.

22.     Upon leaving my office, Crist went to the pill line, cut in line and asked the med-tech for his Tramadol medication for the day. The med tech, not being aware of my decision, gave Crist his afternoon dosage and evening dosage of Tramadol which constituted four (4) pills. Crist took two of the pills in front of the med tech and took the other two pills to his cell. (Crist M-Track 000313)

23.     Approximately 30 minutes after Crist left my office, I spoke with the med tech about discontinuing Crist's Tramadol. The med tech explained that Crist had already been given his Tramadol for the day.

24.     I accompanied officers to Crist's cell to retrieve the Tramadol that Crist had received.

4

25.     Crist could not produce the Tramadol to the officers and stated that someone must have stolen the Tramadol.

26.     Because of his past drug addiction, evidenced manipulation of the med-tech,  and the likelihood that he had developed a tolerance to Tramadol, it was my belief that Crist's medical well being was not best served by continuing to prescribe Tramadol. with narcotic-type pain medication.  On or about March 11, 2009, I discussed this issue with Dr. Roberts and we concluded that Crist should be put on Darvocet instead of Tramadol so that his compliance could be more closely monitored. (Crist M-Track 000307)

27.     Darvocet shows up in both the blood stream and urine when tested. Tramadol does not.

28.     Two weeks after taking Crist off of Tramadol, I spoke with officers who stated Crist had been going to recreation and that he had been participating without evidence of discomfort. (Crist M-track 000307).

29.     In a pain management seminar conducted on or about March 11, 2009, I used some of Crist's interactions and complaints as examples to teach others about pain management to other inmates.  However, I never used any of Crist's name or any other identifying characteristics as part of the examples.  This type of teaching by example without using any identifying information is common in the medical profession and violates no privacy or medical ethics standards.  I did not reveal Crist's personal medical information in retaliation for any of Crist's grievances or legal actions.

30.     After filing prison grievances, Crist filed a notice of intent and request for prelitigation review panel through the Utah Division of Occupational and Professional Licensing,

5

alleging medical malpractice against me and other prison medical employees on February 10, 2010. I received notice of the approval of the prelitigation review panel with the Utah Department of Professional Licensing in early March 2010. After a hearing, the panel found the complaints to be non-meritorious in a written opinion dated June 15, 2010. No prelitigation review panels or investigations occurred in 2009. Thus, neither I nor any medical staff could have retaliated against him for filing his claim or seeking a prelitigation review panel in 2009. I never told Crist that he would never receive treatment again. In fact, in May 2009, Crist threatened that he would "cause problems" for me and would attempt to have my license removed. (Crist M-Track 000276–277) Nonetheless, Crist received treatment from me and other medical staff repeatedly in May and June 2009. (Christ M-Track 000266–277). Additionally, Crist received treatment during the DOPL proceeding and after the opinion that the claims were non-meritorious. (Christ M-Track 000166–180)

  31. During April and May 2009, Crist repeatedly visited the infirmary requesting an increase in his narcotic medication. I restricted him from using the gym not in retaliation for lodging any complaints, but rather because his heavy workout routine seemed to exacerbate his pain complaints. I cancelled all narcotic pain medication for Crist in April 2009 because his MRI contraindicated the prescribed pain medication, because of his repeated pattern of requesting increased dosage and doctor shopping in an attempt to get increased dosage— indications of narcotic abuse and dependency—and because of the reports of abuse and selling of narcotic pain medication in the Promontory Conquest program. (Crist M-Track 000280–285). I removed the gym restriction in June 2010, when I believed he was able to use the gym appropriately for muscle fitness rehabilitation. (Christ M-Track 000175)

32.     In April and May 2009, I spoke with Sergeant William Morell about Crist's behavior in the Promontory Conquest program.  I understood that there were issues in the unit regarding the selling of narcotics medications and that Crist was being removed from the Promontory housing unit.  (Crist M-Track 000281)  Nearly a year later, I included a note in Crist's M-Track medical chart that he was "caught" selling medications and "kicked out" of drug treatment.  This statement was a recollection from conversations occurring more than a year earlier and a mistaken overstatement of the level of direct knowledge the officers had regarding Crist's misuse of narcotic pain medications while in Promontory.  (Crist M-Track 000183)  I included this information as part of my official duties under the Utah Controlled Substances Act to ensure that I do not enable inmates to abuse controlled substances.  I did not include this information for the purpose of causing Crist harm, but rather in a good faith effort to monitor Crist's treatment.  This information is included in Crist's M-Track medical records system, which is accessible only to medical personnel for the purposes of medical treatment.  I did not communicate this information through prison wide information systems.

33.     In or around September, 2010, Dr. Roberts and I decided that Darvocet would be discontinued within the prison system as it was receiving some "bad press." Darvocet was, in fact, pulled from the market in December, 2010. Because, Darvocet was no longer available, Tramadol was again prescribed for Mr. Crist, but at a lower dosage than what he was receiving before it was discontinued in February, 2009. (Crist M-Track 000149)

34.     I never withheld any treatment from Mr. Crist, nor did I encourage any others to do so, in retaliation for any complaint made by Mr. Crist.

7

**DECLARATION UNDER PENALTY OF PERJURY**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the above statements are true and based upon my personal knowledge.

DATED this 22nd day of September, 2011.

                                                   /s/ Kennon Tubbs

                                                  KENNON TUBBS, M.D.

                                                  *(Signed copy of document bearing signature of Dr. Kennon Tubbs is being maintained in Office of the Filing Attorney)*

**CERTIFICATE OF MAILING**

I certify that on September 22, 2011, I electronically filed the foregoing

**DECLARATION OF KENNON TUBBS, M.D.,** using the Court's CM/ECF system and I also

certify that a true and correct copy of the foregoing was sent by United States mail, postage

prepaid, to the following:

DAMON CRIST
#39345
UTAH STATE PRISON
PO BOX 250
DRAPER, UTA 84020-0250

/s/ Yvonne Schenk

9