DAVID N. WOLF (6688)
Assistant Utah Attorney General
MARK L. SHURTLEFF (4666)
Utah Attorney General
Attorneys for Defendants
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
e-mail dnwolf@utah.gov

---

## IN THE UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| DAMON CRIST,<br><br>              Plaintiff,<br>v.<br><br>DR. KENNON TUBBS, et al.,<br><br>              Defendants. | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.  2:10cv00675<br>Judge Ted Stewart |

Defendants Dr. Kennon Tubbs, Sgt. William Morell, Wesley Shuman, Christopher Best, Ford Fannen, Sgt. James Olin and Billie Casper (collectively hereinafter "Defendants" or "Prison Officials"), by and through counsel David N. Wolf, Assistant Utah Attorney General, submit their Memorandum in Support of their Motion for Summary Judgment.

## I.  INTRODUCTION

Plaintiff Damon Crist's complaint contains ten causes of action, alleging violations of his rights under the U.S. and Utah Constitutions and under state law.  The vast majority of Crists's allegations arise from allegedly improper medical treatment received at the Utah State Prison and alleged discontinuation of that treatment in retaliation for his repeated grievances against many

Prison Officials.  Yet, at their core, Crist's complaints are disagreements with the type of medical treatment he received rather whether the prison officials were deliberately indifferent to his serious medical needs, or whether the prison officials retaliated against him for his complaints. Crist's due process claims fail, as he has no right to a particular prison grievance procedure, and all properly filed grievances were processed.  Crist fails to state causes of action under state law or under the State Constitution.  The Prison Officials are therefore entitled to summary judgment on all claims.

## II.  STATEMENT OF MATERIAL FACTS

1.     Plaintiff Damon Crist is an inmate at the Utah State Prison in Draper, Utah.  (Pl.'s Second Am. Compl. (doc.57)[1] at ¶¶ 1, 11).  He was incarcerated for, among other things, theft, burglary, and kidnapping.  (Crist Presentence Investigation Report ("PSIR") I, Ex. A to Second Zeller Decl.,[2] sealed at 1; Crist PSIR II, Ex B to Second Zeller Decl., sealed at 1; (Crist PSIR III, Ex. C to Second Zeller Decl., sealed at 1; Crist Presentence Investigation Addendum, Ex. D to Second Zeller Decl., sealed at 1; Crist Presentence/Postsentence Report, Ex. E to Second Zeller Decl., sealed at 1.)  However, his abuse of narcotics contributed significantly to his crimes.  He admitted being addicted to methamphetamine around the age of 18.  (Crist PSIR I at 3.)  He tested positive for methamphetamine while on supervision (Crist PSIR II at 3.)   He acknowledged that he was "heavily addicted to meth," (Crist PSIR Addendum at 3) and "all of

---

[1]     The Court ordered service of Plaintiff's Second Amended Complaint (doc. 16).  Later, Crist discovered that one page of the Second Amended Complaint had not bee included, and forwarded a complete document to the Court and to opposing counsel (doc. 57).  Defendants consider this version to be the complete pleading, and all references to Plaintiff's Complaint, or Plaintiff's Amended Complaint are to the active Second Amended Complaint (doc. 57) filed June 23, 2011.

[2]     Except for the Second Declaration of Sharon Zeller, which is filed contemporaneously herewith, all references to declarations and exhibits are to those attached to the *Martinez* report (doc. 70) filed September 22, 2011.

his criminal offenses were directly influenced either by alcohol or drug abuse." (Crist PSIR I at 9). As part of his sentence, he was enrolled in the Conquest program for narcotics addiction and treatment. (Tubbs Decl. ¶ 14.)

2. Defendant Kennon Tubbs is a licensed physician, board certified by the American Academy of Family Physicians, who is employed as a part-time physician at the Utah State Prison in Draper, Utah. (Tubbs Decl. ¶¶ 3–4.) Dr. Tubbs has treated Crist many times. (*Id.* at ¶ 5.)

3. Defendants Wesley Shuman, and Ford Fannen are Medical Technicians, or "Med Techs" at the Utah State Prison. (Shuman Decl. ¶ 3; Fannen Decl. ¶ 3.) Defendant Christopher Best was a Med Tech at the prison in 2008 and 2009. (Best Decl. ¶¶ 4–5.)

4. Defendant James Olin is a Sergeant at the Utah State Prison, and has been assigned to oversee housing units in which Crist lived. (Olin Decl. ¶¶ 2–4.)

5. Defendant William Morell is a Sergeant at the Utah State Prison who has been assigned to oversee housing units in which Crist lived. (Morell Decl. ¶ 3, 7.)

6. Defendant Billie Casper is an Inmate Grievance Coordinator at the Utah State Prison. Casper is charged with processing inmate grievances, including grievances filed by Crist. (Casper Decl. ¶ 3.)

### Plaintiff's Reported Back Injury

7. In mid-July 2008, Crist reported experiencing back pain and submitted an Inmate Care Request, or ICR to see a physician. (Crist M-Track 000431–32.) There are no prison records showing any complaints of back pain prior to that time, and none of the med techs who helped dispense medication, or worked the "pill line," had any knowledge of Crist experiencing any back pain before that time. (*E.g.*, Fannen Decl. ¶ 7; Best Decl. ¶¶ 6–9.) Likewise, Sgt.

Morell visited Crist's dormitory numerous times between July 1 and July 18, 2008, and Crist did not appear to be in pain nor did he report any injuries to Sgt. Morell.  (Morell Decl. ¶¶ 6–14.)

8.        On July 18, 2008, Crist attended the pill line and requested medication and a physician's visit to Med Tech Shuman.  (Am. Compl. ¶ 15; Shuman Decl. ¶¶ 6–7.)  Unless there is an emergency situation, med techs do not make medical appointments.  Prison policy is that an inmate must submit an ICR, as Crist did three days earlier.  (Shuman Decl. ¶¶ 8–9; Fannen Decl. ¶ 8–10.)  Crist then threatened to sue Shuman if he did not provide immediate help and became belligerent in the pill line, and Shuman requested that Sgt. Olin intervene.  (Am. Compl. ¶ 16; Shuman ¶¶ 10–11; Olin Decl. ¶¶ 9–13.)

9.        Sgt. Olin informed Crist that he was being disorderly, ordered him off of the pill line, and documented Crist's behavior with a "Negative C-note," the least restrictive management tool available.  (Olin Decl. ¶ 15.)

### Plaintiff's Treatment

10.        On July 23, 2008, Crist was seen by the prison medical staff and was diagnosed with muscle spasms.  The provider observed that Crist appeared to have a lumbar muscle strain which was to be treated with NSAID, muscle relaxant, and ice.  Crist was instructed in proper lifting technique with follow up as needed in the medical clinic.  (Crist M-Track 000430-000431.)

11.        In the following months, Crist was regularly seen by Dr. Tubbs and other prison medical staff.  A physician's assistant prescribed Tramadol HCL 50 mg also known as Ultram. Ultram is used to treat moderate to chronic pain and is an opioid that can be abused or cause dependence.  (Crist M-Track 000391-000392.)  Crist also received physical therapy (Crist M-Track 000409), X-rays (Crist M-Track 000419), multiple MRI scans (Crist M-Track 000370–71,

000353; Crist Hard Chart 000056), an EMG scan (Crist M-Track 000271), and pain medication (Crist M-Track 000419).

12.    On February 20, 2009, Crist was seen by Dr. Tubbs for an evaluation of his back. He complained of severe back pain and demanded an increase in his Ultram.  Dr. Tubbs reviewed the X-rays and MRI with Crist and stated that he was concerned that Crist was addicted to the Ultram. Crist had a history of substance abuse and addiction issues. (Tubbs Decl. ¶¶ 12–18.).  Dr. Tubbs expressed further concern that Crist had built up a tolerance to the Ultram.  Crist disagreed with these concerns and communicated his frustration that he was being treated like a drug addict. Dr. Tubbs discontinued the Ultram because it appeared Crist had built up a tolerance to the drug which inhibited the drug's effectiveness and Dr. Tubbs's was concerned that Crist was showing drug seeking behavior. (*Id.*)

13.    Following Dr. Tubbs's decision to terminate the Ultram and in direct contravention of Dr. Tubbs's orders, Crist sought and obtained additional medication from the pill line which prompted an investigation into this event by the prison staff.  (Crist M-Track 000313; Tubbs Decl. ¶ 22–26.)  When asked to return the Ultram that he improperly obtained from the pill line, Crist admitted to receiving the medication but claimed that some unidentified individual had taken the medication from him. (Crist M-Track 000313; Tubbs Decl. ¶ 25.)

14.    Crist submitted a health care request on March 1, 2009 again complaining of back pain. (Crist M-Track 000313.)  Following the termination of the Ultram, Dr. Tubbs requested a second opinion in Crist's pain management.  After a review of Crist's condition, on March 11, 2009, Dr. Tubbs discontinued the Ultram prescription and instead prescribed Darvocet and Ibuprophen. (Tubbs Decl. ¶ 26, Crist M-Track 000307.)  The medication was changed because Crist's tests did not demonstrate that he needed a narcotic, opiate pain medication, because

Crist's conduct indicated that he may have been becoming dependent on the medication, and because Ultram is not present in drug tests, making the unauthorized use of the drug difficult to detect. (Tubbs Decl. ¶ 26-28; Crist M-Track 000307.) Shortly thereafter, Dr. Tubbs conducted a pain management clinic in which he used some of Crist's interactions and complaints as examples but did not use Crist's name or other identifying characteristics (Tubbs Decl. ¶ 29.) This was done to educate others about how to deal with pain management, narcotics addiction, and prisoner complaints. (*Id.*)

15.    In the weeks following, Crist reported improvement in his back pain with the Darvocet. Dr. Tubbs was informed that Crist had been participating in recreation without evidence of discomfort (Crist M-Track 000307; Tubbs Decl. ¶ 28.)

16.    By April 16, 2009, Crist was again requesting an increase in his pain medication and there was concern that he was "doctor shopping" among the prison medical staff with the intent to obtain additional pain medications. (Crist M-Track 000287.)

17.    In June, 2009, an MRI at the University of Utah Hospital was found to show no indication for surgery and that the disc issues found at L5-S1 were clinically insignificant. The report recommended pain medications as needed from Crist's primary provider. (Crist M-Track 000260.)

18.    In July, 2009, Crist again requested to be placed back on pain medications and also to be seen regarding back injections. (Crist M-Track 000254.)

19.    In August 2009, Crist was seen for continued lower back pain, and more physical therapy was ordered. (Crist M-Track 000245-000246.)

20.    Dr. Tubbs and his staff were unaware of any formal legal proceedings initiated by Crist throughout 2008 or 2009. Dr. Tubbs continued to treat Crist, even though Crist threatened

he would "cause problems" for Dr. Tubbs and his staff and seek to have Dr. Tubbs's license revoked.  (Crist M-Track 000276–77.)

21.     In September, 2009, Crist reported an un-witnessed slip and fall resulting in back pain. Crist was prescribed Cyclobenzaprine (flexeril), a muscle relaxant to help with the muscle spasms, and Crist was referred to a physician for back injections and for physical therapy.  (Crist M-Track 000217-000218.)

22.     On January 13, 2009, Crist was provided with a surgical option to address his back pain.  He elected not to have the surgery. (Crist M-Track 000328.)

23.     In 2010–11, Crist was provided additional MRIs at the University of Utah medical center.  The results showed a "L5-S1 with a broad based disc protrusion. (Crist M-Track 000151-00152, 000007.)

24.     Since Crist's MRI on September 29, 2010, he has been continually prescribed and provided Tramadol.  Crist's later physicians elected to prescribe Tramadol instead of Darvocet because Darvocet's effectiveness was questioned and ultimately removed from the market for pain management. (Crist M-Track 000001-000149; Tubbs Decl. ¶ 33.)

### *Plaintiff's Second Encounter with Sgt. Olin.*

25.     After the July 18, 2008 incident in which Sgt. Olin assisted Med Tech Shuman in removing Crist from the pill line, Sgt. Olin next encountered Crist on August 26, 2008.  On that day, he was assigned as the North Point Transportation Officer, and as part of his duties, was required to transport inmates housed at Promontory Point to the prison infirmary.  Crist was on the schedule to be transported.  (Olin Decl. ¶ 19–22.)  Sgt. Olin did not elect to enter Promontory Point or seek out Crist, but rather, it was part of his assigned duty to do so.  (*Id.*)

7

26.     After entering the facility and noting that Crist was on the list, Olin asked the staff on duty if they knew about the July 18, 2008 pill line incident with Crist.   Olin thereafter described the situation, and described Crist with the derogatory term "pussy."   (*Id.* ¶¶ 22-26.)

27.     Another inmate communicated portions of the conversation to Crist, and Crist refused to take transport from Olin.   (*Id.* ¶¶ 29–33; Am. Compl. ¶ 22.)   Olin explained that Crist would not be alone with Olin and there was no reason to be afraid; nevertheless, Crist still refused transport.   (Olin Decl. ¶ 31–33.)

**Plaintiff's Grievances.**

28.     Throughout the course of his incarceration, Crist has filed numerous grievances against a number of prison officials.   These grievances are to be processed through a procedure set forth in the Utah Department of Corrections Inmate Grievance Policy.   (Casper Decl. ¶¶ 5– 14, & Ex. 1).   Crist was familiar with the grievance procedure.

29.     Crist filed a number of grievances directly at Level Two or Three, in contravention of prison policy that grievances must be filed at Level One to allow the grievance to be resolved at the lowest level possible.   (Casper Ex. 1 & 4 ¶¶ 18.)   One of Crist's grievances was denied because they were filed at Level Two without first being filed at Level One. (Casper Decl. ¶ 18.)   Crist appealed that determination, and received notice from Warden Turley that Casper could not open a grievance at Level Two until a prior level response was issued.   (*Id.* ¶ 20.)

30.     The Prison Officials addressed the issues in Crist's properly filed grievances.   For example, when he grieved that a "caution" records in his O-Track stated that he was removed from the Conquest program for selling drugs, the caution was subsequently removed.   (*Id.* ¶ 26.)

31.     The caution arose from Dr. Tubbs's misrecollection, from incidents arising nearly a year before, of how Crist completed the Conquest program, and Dr. Tubbs's understanding of the level of detail known by the officers in the Conquest program of who was illegally distributing drugs among the inmates.  (Tubbs Decl. ¶ 32.)  After Casper spoke with Dr. Tubbs about the caution, it was removed from the O-Track system.  (Casper Decl. ¶ 26.)  To the extent the information remains, it is located only in Crist's confidential medical records, to which only medical staff have access.  (Tubbs Decl. ¶ 32.)

## III. LEGAL STANDARD

### A. Summary Judgment

The prison officials bring their summary judgment motion pursuant to Rule 56. Summary judgment shall be granted to the moving party when the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Jones v. Salt Lake County*, 503 F.3d 1147, 1152–53 (10th Cir. 2007) (citing former Federal Rule or Civil Procedure 56(c)).  The Prison Officials have the initial burden to establish the absence of material fact to support the non-moving party's claims. *Jensen v. Kimble*, 1 F.3d 1073, 1076 (10th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  In so doing, they may cite to particular parts of materials in the record supporting the fact, or may show that the cited materials "do not establish the absence ... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  However, once that burden is met, the burden then shifts to Mr. Crist to demonstrate a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 324.  In responding to the motion, Mr. Crist may not rely on the bare allegations from his complaint, but rather must "designate specific facts showing there is a genuine issue for trial."  *Id.* (quotations

omitted).  If the non-movant fails to meet its burden as to one element of a claim, summary judgment is appropriate on the claim.  *Id.* at 323.

### B. Qualified Immunity

The Prison Officials assert the defense of qualified immunity.  Qualified immunity shields government officials who perform discretionary functions from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818) (1982)).  Qualified immunity "is 'an immunity from suit rather than a mere defense to liability …  it is effectively lost if a case is erroneously permitted to go to trial' [and was created] to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (further citations and quotations omitted)).  When a state official asserts qualified immunity, she creates a rebuttable presumption that she is immune from the plaintiff's § 1983 claims.  *See Medina v. Cram*, 252 F.3d 1124, 1129 (10th Cir. 2001).  Two elements exist in the qualified immunity analysis—first, whether, under the facts alleged by the plaintiff, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct…."  *Pearson v. Callahan*, 555 U.S. at 231 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Summary judgment on qualified immunity may be denied only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the actions were unconstitutional.  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  But "'if officers of reasonable competence could disagree' about the lawfulness of the challenged conduct, then '[qualified]

immunity should be recognized.'"  *Gomes*, 451 F.3d at 1136 (alteration in original) (quoting *Malley*, 475 U.S. at 341).

If the material facts are not disputed, the question of immunity is a legal one for the court to decide.  *Id.*  "[T]here is no such thing as a 'genuine issue of fact' as to whether the officer 'should have known' that his conduct violated constitutional rights.  The conduct was either 'reasonabl[e] under settled law in the circumstances,' or it was not…."  *Id.* (second alteration in original) (quoting *Pace v. City of Des Moines*, 201 F.3d 1050, 1056 (8th Cir.2000) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))).  If the plaintiff fails to satisfy any element of his heavy burden, the court must grant the defendant qualified immunity.  *See Medina*, 252 F.3d at 1128.

## IV. LEGAL ARGUMENT

Christ's Second Amended Complaint includes seven numbered causes of action, and three additional causes delineated as "pendant jurisdiction."  Some counts have overlapping legal claims, others seem to have factual similarities.  As is clear, all of Crist's causes of action are subject to summary judgment, and at a minimum, each defendant is entitled to qualified immunity.

### A.  Due Process Claim (Count I) Fails

Count I of the Amended Complaint seeks damages pursuant to the Due Process Clauses of the U.S. Constitution,[3] because, according to Crist, his "grievance [was] improperly denied

---

[3]      Crist alleges that Defendants violated his Fifth Amendment rights. (Am. Compl. at 12 ¶ A).  But the Fifth Amendment applies only to federal employees.  *Dusenberry v. United States*, 534 U.S. 161, 167 (2002); *Ward v. Anderson*, 494 F.3d 929, 932 n.3 (10th Cir. 2007).  As state employees, Defendants cannot be sued under the Fifth Amendment, and this claim therefore fails.

and delay[ed] by Defendant Casper resulting in lack of exhaustion issues in this lawsuit."[4]  (Am. Compl. at 12 ¶ A.)   This claim fails because Crist has no due process right to the prison grievance system, and even if he did, Defendant Casper properly processed Crist's grievances pursuant to prison policy.

Crist's allegations that Casper failed to follow grievance policies do not state a cognizable claim under the Fourteenth Amendment.  The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Clause's procedural protections are "a safeguard of the security of interests that a person has already acquired in specific benefits." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).

Determining whether the government has violated an individual's right to due process requires the Court to answer two questions: "(1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process [?]"  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

In this case, the answer to the first question is "no" because the grievance procedures did not create a liberty interest.  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1339 (10th Cir. 2007) (internal quotation omitted).

Crist alleges that his grievances were "delayed and then disqualified" to "hinder and deny plaintiff due process and access to exhaust his administrative remedies."  (Am Compl. ¶ 21.)

---

[4]     Defendants do not allege that Crist's claims fail for lack of exhaustion of administrative remedies under the Prison Litigation Reform Act.

Even if the internal procedures were not precisely followed, the violation of internal policy, regulations, and directives does not equate to a violation of due process rights.  As the Supreme Court has recognized, prison regulations are "primarily designed to guide correctional officials in the administration of a prison… .  [They are] not designed to confer rights on inmates."  *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995).

Because Crist had no substantive interest entitled to due process protection, he cannot claim that Defendants violated his procedural due process rights.  Crist's claims for alleged due process violation therefore fails as a matter of law under the first part of the qualified immunity defense.

Crists's due process claim also fails because Casper *did* follow grievance policies and procedures.  Crist's grievances were processed and handled in accordance with the State of Utah Department of Corrections Institutional Operations Division Manual, chapter FDr02 Inmate Grievances (the "Grievance Manual") (attached to Defendants' *Martinez* Report as Ex. 1 to Billie Casper Decl.)  All grievances that Crist submitted to Casper were reviewed and responded to in accordance with the Grievance Manual.  (Casper Decl. ¶¶ 16–29.)  Crist had multiple opportunities to have his claims evaluated at various levels.  At each level, Crists's claims were considered in a timely fashion and deemed either to be unfounded or appropriate relief was provided.  (*Id.*)  Crist was able to appeal each decision until he exhausted his administrative remedies.  The disallowed grievances were done so only because Crist failed to first file the grievance at "Level One."  (*Id.* ¶ 20–23.)

But even if Crist could produce evidence showing that Casper or other Department of Corrections employees failed to follow a prison policy or procedure, such a failure would not support a claim under 42 U.S.C. § 1983.  "A violation of state law cannot give rise to a claim

under Section 1983." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1164 (10th Cir. 2003); *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) ("Section 1983 does not … provide a basis for redressing violations of state law, but only for those violations of federal law done under color of state law."). Like an alleged violation of a state statute, an alleged violation of Department of Corrections policy cannot form the basis of a Section 1983 claim.

Further, even if the Prison Officials' actions could result in constitutional liability, qualified immunity may be denied only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" the actions were constitutional. *Malley*, 475 U.S. at 341.

In this case, Casper processed each of Crist's grievances as appropriately as she could under the circumstances. Given the confusion caused by Crist filing multiple grievances, Casper did her best to ensure each of Crist's grievances were responded to. There is nothing in the record to show that Casper should have known that she did anything to violate Crist's constitutional rights. On the contrary, the record shows that Casper evaluated each of Crist's grievances in a timely fashion. (*See* Casper Decl. Ex. 2.) Because no clearly established law could have alerted Casper that that her attempts to timely and accurately process Crist's grievance violated his constitutional rights, Crist's due process claim against her fails under the second part of the qualified immunity defense.

### B.  First Amendment Retaliation Claims (Counts II, III, & IV) Fail

The bulk of Crists's complaints against the prison officials sound in retaliation—in fact, it appears that Crist believes every action taken against him was in retaliation for some conduct or activity he undertook. But Crist cannot recover unless he presents evidence showing that he was

actually retaliated against for engaging in protected activities.  There are no issues of fact supporting his claims.  Accordingly, the Prison Officials are entitled to qualified immunity, and summary judgment should be granted.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Smith v. Maschner*, 899 F.2d 940, 940 (10th Cir. 1990).  To avoid summary judgment on a retaliation claim, a plaintiff must produce facts showing "(1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct."  *Howards v. McLaughlin*, 634 F.3d 1131, 1144 (quoting *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir.2009) (further citations and quotations omitted)).

The plaintiff must prove he was engaging in a constitutionally protected activity.  If he had no right to engage in the activity, or if his alleged protest is frivolous, a plaintiff cannot meet the first element.  *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996) (holding that prisoners' constitutional rights to access the courts are not violated if the claim interfered with is frivolous). Regarding the second element, it is not sufficient that the plaintiff prove that he would be chilled by the conduct; instead, the test is objective:  Would a person of "ordinary firmness" be chilled. This test also depends upon the type of "person" a plaintiff is—a citizen, employee, or prisoner. *See Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (noting that the test encompasses a "similarly situated" person of ordinary firmness (citations and quotations omitted)); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (articulating the test as an "inmate of ordinary firmness"); *Perkins v. Clayton Twp.*, No. 2:08-CV-14033, 2009 WL 3498815 (E.D. Mich. Oct.

23, 2009) (unpublished op.) ("[P]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens before an action taken against them is considered adverse." (citations and quotations omitted)).[5]  Finally, a plaintiff must prove but-for causation—that the retaliatory purpose is the "decisive factor" in the adverse action.  *Strope v. McKune*, No. 09-3283, 382 F. App'x 705, 2010 WL 23332079 (10th Cir. June 11, 2010) (unpublished op.).  The plaintiff shoulders the burden of proving causation.  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

Crist's cannot create a triable issue of fact on any of the claims against the individual prison officials.  Therefore, summary judgment is appropriate.

### 1.      Dr. Tubbs (Count II)

Crist's claims against Dr. Tubbs surround the discontinuation of Tramadol (to be replaced by other pain relievers) for Crist's back injuries and using his case as an example for a pain management seminar.  (Am. Compl. at 12 ¶ B.)  Even assuming that Crist's lawsuits and grievances are considered to be constitutionally protected interests, at the time Dr. Tubbs first discontinued Tramadol, he had no knowledge of Crist's lawsuits or grievances, including Crist's request for a medical malpractice prelitigation review panel.  (Tubbs Decl. ¶¶ 19, 30.)  Such a temporal mismatch is fatal to Crist's complaint.  *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (recognizing that an averse action must have "temporal proximity" to the allegedly protected activity); *see also, e.g.*, *Meadows v. Ford Motor Co.*, 21 F. App'x 302, 304, (6th Cir. 2001) (unpublished, per curiam op.) (holding, in the employment retaliation context, that "[o]bviously, there can be no causal connection drawn here, because the plaintiff admits that the [adverse actions] at issue had been made prior to the protected activity").

---

[5]      The Prison Officials have provided a printed copy of all unpublished cases as a courtesy to the pro se plaintiff.

In addition, Dr. Tubbs had legitimate medical reasons for both discontinuing Tramadol and engaging in the pain management seminar.  Crist has a history of narcotics abuse, admitting that the crimes for which he had been sentenced were "directly influenced by either drug or alcohol abuse."  (Crist PSIR I, Ex. A to Second Zeller Decl., sealed, at 9; Crist PSIR II, Ex. B to Second Zeller Decl. sealed, at 3; Crist PSIR III, Ex. C to Second Zeller Decl., sealed at 3, Crist PSIR Addendum, Ex. D to Second Zeller Decl., sealed, at 3; Crist M-Track 000527.)  He was displaying medication-dependent behaviors, including seeking increased doses of the medication beyond what objective medical evidence appeared necessary, and he was doctor-shopping in an attempt to get more drugs.  (Tubbs Decl. ¶¶ 18, 31.)  Further, Dr. Tubbs understood that Tramadol was being sold on the black market prisoners preferred this medication because it could not be detected in urine tests.  (Tubbs Decl. ¶¶ 18, 27.)

Crists's allegations regarding the pain management clinic also do not create a triable issue of fact.  There is nothing to suggest that an inmate of ordinary firmness would be discouraged from filing grievances by the use anonymous of his conduct (without disclosing personal information) in a customary pain management seminar.  (Tubbs Decl. ¶ 29.)  And Dr. Tubbs's use of Crist's case was to demonstrate how to deal with inmates' pain management complaints, in light of inmates' history of narcotics abuse and the security conditions in the prison.  (*Id.*)  Thus, for medical reasons, for patient safety, and prison security, Dr. Tubbs decided to switch Crist's medications.  Even if the changes in medication and use of Crist's case would chill an inmate of ordinary firmness from continuing to grieve, Crist cannot create a triable issue on his retaliation claim against Dr. Tubbs Crist cannot prove that the decisive factor in Dr. Tubbs's actions was to retaliate against Crist.  In fact, Dr. Tubbs's clear purposes were to

treat his patient, educate others, and guard against illegal distribution and consumption of narcotic pain medications.

### 2.    Dr. Tubbs & Sgt. Morell (Count III)

Crist alleges he was retaliated against by Dr. Tubbs and Sgt. Morell's statements regarding his use of or sale of drugs while in the Conquest program at the Promontory housing unit.  (Am. Compl. at 12 ¶ C.)  The defendants are entitled to summary judgment on this claim. Assuming that some of Crist's grievances regarding his medical treatment are protected activity, Crist cannot point to an adverse action.  The records to which Crist refers are disclosed only to medical staff for the purposes of aid in treating patients, and the "caution" placed in Crist's general inmate file, O-Track, was removed after review through the grievance process.  (Tubbs Decl. ¶ 32; Casper Decl. ¶ 26.)  There is nothing to suggest that including such information in a patient's medical file would chill an inmate of ordinary firmness in continuing to file grievances. And there is no causation.  As described above, Tubbs's use of the information was to treat a patient with a history of narcotics abuse and to safeguard misuse of narcotics in the prison. Summary judgment is appropriate.

### 3.    Sgt. Olin (Count IV)

Finally, Sgt. Olin is entitled to qualified immunity on the retaliation claim in Count IV. Crist's complaint against Sgt. Olin arises from encounters in the pill line on July 18, 2008 and medical transport on August 26, 2008.  In July, Crist was belligerent to Med Tech Schuman during a pill line; Schuman requested assistance from Sgt. Olin.  (Schuman Decl. ¶¶ 8–13.)  Sgt. Olin recorded a "negative C-note" describing the encounter, the least restrictive management tool available (*Id.* ¶ 15.) There is no protected activity here; an inmate has no right to demand to be treated by a med tech, and has no right to yell or threaten any prison official.  Even if some

recognizable grievance had been filed, there is no evidence that a simple write-up, with no serious resulting consequences, would cause an inmate of ordinary firmness to cease the grievance.  Finally, there is no causation.  Sgt. Olin reported a hostile and belligerent inmate.  It was Crist who admittedly threatened a prison official, not the other way around.  (Am. Compl. ¶ 16.)

Likewise, Crist's allegations regarding the transport cannot support a retaliation claim. At most, Crist alleges that Olin made derogatory statements about Crist to other guards, and because of these statements, Crist refused to take a transport, with other prisoners, to his medical appointment.  (Am. Compl. ¶ 22; *cf.* Olin Decl. ¶¶ 19–33.)  Crist has no evidence to suggest that Olin "came into" Crist's housing unit (Am. Compl. ¶ D); rather, Olin was assigned to transport prisoners that day.  (Am. Compl. ¶ 22; Olin Decl. ¶ 19.)  Crist voluntarily refused transport to a medical appointment.  (Olin Decl. ¶¶32–33.)  These facts fail to establish a claim.  Going to a medical appointment is not a "protected activity" for the purposes of retaliation.  *Peterson*, 149 F.3d at 1144 (requiring "specific facts showing retaliation because of the exercise of [a plaintiff's] constitutional rights").  Further, an inmate of ordinary firmness would not be discouraged from going to the appointment (or grieving Olin's allegedly improper conduct) by Olin's allegedly harassing statements, asking guards to put a "muzzle" on him and calling him a derogatory name.  Unprofessional and inappropriate comments do not chill a person of ordinary firmness from continuing to perform their protected activities.  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." (citation and quotation omitted); *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (discussing derogatory comments made to citizens protesting a local government's actions); *Harrell v. Jenkins*, No. 09-CV-10132, 2010

19

WL 3582529 at *5 (unpublished op.) (E.D. Mich. July 23, 2010) ("[A]lleged verbal harassment and name calling by [prison guards] are inconsequential and would not deter a person of ordinary firmness from engaging in protected conduct.").

Crist's retaliation claims against the Prison Officials fail, as he can create no triable issue of fact on (a) the protected activity, (b) that any adverse conduct chilled a person of ordinary firmness from continuing the protected activity, or (c) that there is any but-for causation between the protected activity and the adverse action.

### C. Eighth Amendment Claims (Counts II, III, IV, V, VI, VII) Fail

In addition to retaliation claims, Crist also alleges that the State Defendants' actions violate the Eighth Amendment proscription against cruel and unusual punishment.  The Eighth Amendment's ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate food, clothing, shelter, and medical care …." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)).  To state a cognizable claim under the Eighth Amendment for failure to provide medical care "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Any Eighth Amendment claim must be evaluated under an objective and subjective prong:  "Was the deprivation sufficiently serious?" and, if so, "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *accord Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999).  A medical need is "sufficiently serious" "'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Sealock v. Colo.*, 218 F.3d 1205,

1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (further citations and quotations omitted).  The subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it …." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

As with Crists's retaliation complaints, Crist raises an Eighth Amendment claim against a plethora of prison officials.  But Crist cannot meet the objective or subjective standards for the conduct of any Prison Official.  Accordingly, all claims should be denied.

### 1.    Dr. Tubbs (Count II)

Crist's Eighth Amendment complaint against Dr. Tubbs is essentially that he discontinued Crist's pain medication and "discontinue[d] medical treatment as punishment." (Am. Compl. at 12 ¶ B.)  Crist requested—and would have preferred—to be prescribed and provided the narcotic pain medication Tramadol, but the medication was discontinued because (a) Dr. Tubbs believed that Crist may have been becoming dependent on the narcotic medication, based on Crist's prior history of narcotics abuse, his continual request for higher doses, and his "doctor shopping" to find a medical provider who would prescribe higher doses (Tubbs Decl. ¶¶ 12–14, 18, 19, 26, 31), (b) the fact that Tramadol is a narcotic and is not detectable in urine tests, which makes Tramadol a better candidate for trade for non-approved use in prison (Tubbs Decl. ¶¶ 27, 32), and (c) Crist's tests and lifestyle did not indicate the sever pain he reported (Tubbs Decl. ¶¶ 16–18, 28).  Crist's allegations are nothing more than mere disagreement with medical treatment, which cannot rise to the level of an Eighth Amendment violation.  *See, e.g.*, *Gee*, 627 F.3d at 1192  ("Disagreement with a doctor's particular method of treatment, without

more, does not rise to the level of an Eighth Amendment violation."); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).

And the record indisputably shows that Dr. Tubbs, and his medical staff, provided treatment for Crist's back injuries. He was seen numerous times when proper prison procedures were followed. (*E.g.,* Crist M-Track 000491, 000430–31, 000391–92, 000313, 000254, 000245–46. 000217–18). He received medical tests, including X-rays, EMGs, and MRIs of his back (Crist M-Track 000419, 000353, 000271, 000276; 000151–52, 000007; Crist Hard Chart 000056). He has received pain medication and physical therapy for his back. (Crist M-Track 000391–92, 000409, 000307, 000238–39, 000211, 000001–194.) There were tests, diagnoses, medically selected courses of treatment. Far from being deliberately indifferent, Dr. Tubbs was deliberately mindful of his patient's medical needs, balancing the treatment needed, the pain expressed by Crist, and the need to keep an admitted drug abuser from relapsing on prescription medication. Dr. Tubbs is entitled to judgment as a matter of law.

## 2.    Sgt. Morell (Count III)

Crist pleads that Sgt. Morell violated Crist's Eighth Amendment rights, but alleges only that Sgt. Morell "created fraudulent documentation … by claiming the Crist was caught selling drugs." (Am. Comp. at 12 ¶ C.) Though the statement is untrue, even if it were true, it could not support an Eighth Amendment claim. As a layperson, Sgt. Morell is not responsible for Crist's medical care, and Crist does not raise a genuine issue that Sgt. Morell was deliberately indifferent to a serious medical need. Further, Crist does not allege any facts suggesting Sgt. Morell inflicted wanton and unnecessary pain. All allegations in Count III related to retaliation have been addressed above. Sgt. Morell is entitled to judgment as a matter of law on Crist's Eighth Amendment claim in Count III.

### 3.      Sgt. Olin (Count IV)

Likewise, Count IV pleads an Eighth Amendment claim against  Sgt. Olin, but the allegations contained in the Count refer to Sgt. Olin's writing a negative "C-note" in Crist's file following the incident in the pill line on July 18, 2008 and Sgt. Olin's alleged "threat" when he arrived to transport Crist to a medical appointment.  (Am. Compl. at 13 ¶ D.)  These facts do not state a claim for any deliberate indifference to serious medical needs or wanton infliction of pain under the Eighth Amendment, and the retaliation allegations have been addressed above.  Verbal harassment does not constitute an Eighth Amendment violation.  *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding no Eighth Amendment violation against sheriff who threatened to hang prisoner after prisoner's request to mail legal correspondence); *Rivera v. Hassler*, Nos. 03-1232, 03-1272, 79 F. App'x 392, 294 2003 WL 22422419, at * 1 (10th Cir. Oct. 24, 2003) (unpublished op.) (holding that prison guard's teasing, harassing, and false accusation that former inmate stalked her did not amount to Eighth Amendment violation).  Further, Sgt. Olin did not interfere with Crist's medical treatment, but rather Crist, who would have been transported along with other inmates by Sgt. Olin, refused such transport.  (Olin Decl. ¶¶ 30–34 & Ex. 2.)  Sgt. Olin is entitled to summary judgment on the Eighth Amendment claim.

### 4.      Med Techs Best, Shuman, & Fannen (Counts V, VI, & VII)

Counts V, VI, and VII of Crist's Amended Complaint alleges Eighth Amendment claims against three prison Med Techs Christopher Best, Wesley Shuman, and Ford Fannen.  Crist claims that the med techs violated the Eighth Amendment by "violat[ing their] gatekeeper duty as a medical technician [by] failing to report Crist's injury and extreme pain to a qualified person for diagnosis."  (Am. Compl. at 13–14 ¶¶ E–G.)  His factual basis for this claim is that he allegedly told the med techs during the daily pill dispensation, or "pill line," that he was in pain

and needed to see a doctor and that the med techs did not schedule an appointment.  (*E.g.*, *id.* ¶¶ 12–18.)   It is not a med tech's job to schedule medical appointments; routine medical appointments must be made by submitting a medical request form, called an inmate care request, or ICR.  (Fannen Decl. ¶ 7–9; Shuman Decl. ¶¶ 7–9; Best Decl. ¶ 9–12.)  Med techs in pill lines perform assessments only if there is an emergency situation requiring immediate attention.  (*Id.*). Requiring an inmate to submit a care request, or sick call, when no emergency situation exists does not constitute deliberate indifference.  *E.g.*, *Gonzalez v. Chudy*, No. C 10–3732 CW (PR), 2011 WL 4047577, at * 4 (N.D. Cal. Sept. 9, 2011) (unpublished op.) (holding that no deliberate indifference claim exists where defendants required prisoner to fill out a medical request form before being seen by a doctor in the absence of a medical emergency); *Curtis v. Gonzales*, No. SA-09-CV-0911 OG (NN), 2010 WL 3928521, at * 2 (unpublished op.) (W.D. Tex. Oct. 5, 2010) (same); *Brown v. McKnight*, No. 7:09-cv-00038, 2009 WL 734965, at * 4 (W.D. Va. March 19, 2009) (unpublished op.) ("The nurses could rightly expect that [the inmate]'s failure to file a sick call request indicated that he did not want [medical] attention, which apparently incurs a charge.  [The inmate] chose not to request pain medication by the required method and so caused the delay in his receiving such relief .").

Furthermore, a medical need is only "serious" if it has been diagnosed by a physician or "so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209.  Crist's alleged complaints of back injury were certainly not that obvious.  Prison officials do not recall Crist making any complaints or exhibiting any signs of extreme pain during that time period, and prison records indicate that Crist made no complaints or formally requested medical attention until July 15, 2008.  (Morell Decl. ¶¶ 7–12; Crist M-Track 000431.)  To the extent that Crist's complaint lies in the delay between the time he

initially submitted a medical request (which prison records show to be July 15, 2008) and the time he was actually seen (July 21), delay, without "substantial harm," is insufficient to prove deliberate indifference, particularly when the delay is caused by the inmate's failure to follow procedures.  *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (citations and quotations omitted); *see also Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981) (per curiam) (holding no deliberate indifference when a prisoner received treatment only following established prison procedures).

The med techs followed procedure, and it is uncontestable that Crist's injuries were not obvious.  Therefore, they are thus entitled to qualified immunity and judgment in their favor on Counts V, VI, and VII.

### D. State Tort Claims Fail (Cause of Action ¶¶ C, H, J)

**1. Defamation Fails**

Crist alleges that Dr. Tubbs and Sgt. Morell "conspired to fabricate a story about Crist selling drugs and getting kicked out of a drug treatment program, and posted these lies all over medicals and security prison wide information systems to cause harm," which he claims is redressable under the state tort of defamation.  (Am. Compl. ¶ J.).  Dr. Tubbs and Sgt. Morell are immune on the basis of the Governmental Immunity Act of Utah, *see* UTAH CODE ANN. § 63G-7-301(5)(b); *cf. id.* § 63G-7-202(3).  The statement is also absolutely privileged under Utah state libel law, which excepts from liability any statement made "[i]n the proper discharge of an official duty."  UTAH CODE ANN. § 45-2-3(1).  There can be no doubt that, as Crist's custodian and physician, Sgt. Morell and Dr. Tubbs had a recognized obligation to record their understanding of Crist's use of prescription medication in medical records.  *Cf. Becker v. Kroll*, No. 2:02-CV-24 TS, 2009 WL 3181977 at *4–5 (D. Utah Sept. 29, 2009) (unpublished op.)

(interpreting section 45-2-3(1)).  Beyond the absolute immunities clearly present, Crist cannot state a claim under the tort.

To state a claim for defamation, in Utah, one "must show that defendants published the statements concerning [the plaintiff,] that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage." *West v. Thompson Newspapers*, 872 P.2d 999, 1007 (Utah 1994).

Crist's claims fail on nearly every element.  Crist has no evidence to show that any statements were "published."  "Publication" generally requires that the defendant "make public" the statement; circulation within a government agency is insufficient. *Asbill v. Housing Auth. of Chocktaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984), *cited in Mercer v. Bd. of Trustees*, No,. 00-1163, 17 F. App'x 913, 2001 WL980760, at *2 (unpublished op.) ("[C]irculation of a statement within an institution or agency, does not, by itself, constitute publication [for defamation]."); *see also DeBry v. Godbe*, 1999 UT 111, ¶ 23, 992 P.2d 979 (Utah 1999) (noting that defamatory statement must be communicated to and understood by a third party); *Zoumadakis v. Uintah Basin Med Ctr., Inc.*, No 20080067-CA, 2009 UT App 135, 2009 WL 1423559 at * 1 (unpublished op.) (holding that confidential employee file was not "published," even though the file "has been or could be published to potential future employers").  The allegedly defamatory information was inserted only in Crist's prison medical records, accessible only to medical personnel for the purposes of medical treatment.  (Tubbs Decl. ¶ 32.)  Therefore, the information was not "published," and Crist has no claim.

Crist has no evidence indicating that anything Sgt. Morell said was untrue.  (*See* Morell Decl. ¶¶ 21–24.)  He has no evidence indicating that any untrue statements were published with any requisite degree of fault.  (*Id.*; *see also* Tubbs Decl. ¶ 32.)  These facts are fatal to his claim.

If the reports would somehow be considered "published," Dr. Tubbs and Sgt. Morell are shielded with a qualified privilege, as the statements were made to protect interests of the publisher of third persons, "'regarded as being sufficiently important to justify some latitude for making mistakes ....'"  *Brehany v. Norstrom, Inc.*, 812 P.2d 49, 58–59 (Utah 1991) (citations and quotations omitted).  Dr. Tubbs' statements were legitimate, to further Crist's course of medical treatment, and to protect illegitimate distribution of narcotics in prison.  Thus, the statements are protected by qualified privilege.  *See id.* (holding that store's report given only to management, that an employee was dismissed for "drugs" was privileged); *Zoumadakis,* 2009 UT App 135, 2009 WL 1423559 at * 1 (recognizing that medical center employees "share a legitimate common interest in providing quality health care" and statements about employee having alcohol on her breath while treating patients were privileged).

Finally, Crist has not shown any damages.  "[A]n action for defamation is intended to protect an individual's interest in maintaining a good reputation."  *West*, 872 P.2d at 1008.  Crist has not pleaded or proved that any misstatements caused him any damage to his reputation.  The "caution" in Crist's inmate O-Track was removed after Crist grieved it, on May 6, 2010 (Casper Decl. ¶ 26.)  Furthermore, as a convicted felon in prison for crimes he admitted are inexorably intertwined with his drug addiction, he is "libel-proof," at least for any allegations related to his improper use of narcotics in prison.  *See Lamb v. Rizzo*, 391 F.3d 1133, 1137–39 (10th Cir. 2004) (describing the "libel proof" doctrine, applying Kansas law and granting summary judgment against convicted felon).  If these statements were "published," if they are in fact

libellous, and if they are not privileged, this is an instance where "allegedly libellous statements cannot realistically cause impairment of reputation," and the claim should be dismissed.  *Id.* at 1139 (quoting *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303 (2d Cir. 1986)).

**2.      Intentional Infliction of Emotional Distress Fails.**

Crist also argues that the alleged fabricated story about him selling drugs, and Dr. Tubbs's cautions posted in Crist's medical records states a claim for intentional infliction of emotional distress.  As with Crist's defamation count, and notwithstanding that Dr. Tubbs and Sgt. Morell are immune on the basis of the Governmental Immunity Act of Utah, *see* UTAH CODE ANN. § 63G-7-301(5)(b); *cf. id.* § 63G-7-202(3), Crist cannot state a claim under the tort. To state a claim for intentional infliction of emotional distress,

> a plaintiff must plead facts that demonstrate that the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

*Oman v. Davis Sch. Dist.*, 2008 UT 80, ¶ 51, 194 P.3d 956, 970 (Utah 2008) (citations and quotations omitted).  "Outrageous" conduct "must evoke outrage or revulsion" and be "so extreme in degree as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at ¶ 53 194 P.3d at 970.  It must be "more than unreasonable, unkind unfair" or even conduct that may support punitive damages. *Id.*  It is up to the court, in the first instance, to determine whether conduct is "outrageous," and the court grant summary judgment if the pleaded facts, not the mere plaintiff's conclusions, do not rise to the level of extreme and outrageous conduct.  *Gygi v. Storch*, 208 Utah 2d 399, 401–02, 503 P.2d 449, 450 (1972) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. h (1965)).

As discussed above, Dr. Tubbs' and Sgt. Morell's conduct was reasonable and necessary to treat Mr. Crist, to control narcotic pain medication in prison, and to secure the prison. (Morell Decl. ¶¶ 19–24; Tubbs Decl. ¶¶ 18–19.) Dr. Tubbs's recording of Crist's status in the Conquest program, nearly one year after the fact, was a mistaken overstatement of the level of direct knowledge the officers had about Crist's use of pain medication while in the program. (Tubbs Decl. ¶ 32.) This was not extreme and outrageous conduct. But even accepting Crist's bare allegations in the complaint as true, this "fabricated story" cannot rise to the level of extreme and outrageous conduct as a matter of law. *Cf. Ngyen v. IHC Health Servs., Inc.*, 2010 UT App 85, ¶ 9 & n.4, 232 P.3d 529 533–34 & n4. (Utah Ct. App. 2010) (holding that physician who used a patient "as a test subject for, and as part of a sales demonstration of" a ventilator, did not rise to the level of outrageous conduct, and collecting, comparing, and contrasting Utah cases evaluating whether conduct was legally "outrageous"). Furthermore, Crist has not pleaded any facts showing that Dr. Tubbs or Sgt. Morell engaged in conduct with the purpose of inflicting emotional distress, and Crist has not articulated any emotional distress he experienced through these actions. Crist's intentional infliction of emotional distress claim is insufficient on multiple elements, and the defendants are entitled to summary judgment.

### E. State Constitutional Claims Fail (Counts II, III, IV, V, VI, VII, and Cause of Action ¶ I)

Crist attempts to re-argue nearly all of the counts in the Second Amended Complaint as a violation of Crist's rights under the Utah Constitution, Article I section 9, to be "free from unnecessary rigor." *See* UTAH CONST. art. I § 9. ("Persons arrested or imprisoned shall not be treated with unnecessary rigor."). This claim fails because all of Crist's complaints may be addressed through § 1983.

The Utah Supreme Court, while acknowledging that there is no federal counterpart for the Unnecessary Rigor Clause, recognized it has had "few opportunities to interpret or apply" it. *Dexter v. Bosko*, 2008 UT 29, ¶ 7, 184 P.3d 592, 595 (Utah 2008).  The Utah Supreme Court has held that the clause guarantees against "unnecessary abuse" of prisoners or arrestees that is "needlessly harsh, degrading, or dehumanizing"  *Id.* (citations and quotations omitted).  It also includes protections against "intentional physical abuse" of inmates or arrestees or "from the imposition of circumstances on them during their confinement that demand more of the prisoner than society is entitled to require," focusing on "the circumstances and nature of the process and conditions of confinement."  *Id.* at ¶¶ 16–17, 184 P.3d at 596.

However, because Utah has no statutory cause of action for constitutional violations similar to 42 U.S.C. § 1983, a cause of action for monetary damages only arises against a governmental agent for violation of the Utah constitution if (1) the provision alleged to be violated is "self-executing," (2) the plaintiff suffered a "flagrant" violation of rights, (3) *existing remedies do not redress the plaintiff's injuries*, and (4) equitable relief is inadequate to protect the plaintiff's rights or redress the plaintiff's injuries.  *Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶¶ 20–26,16 P.3d 533, 537–39 (Utah 2000) (emphasis added).  The Utah Supreme Court urges caution in expanding new judicial remedies where existing remedies are sufficient, and deference to other remedies out of respect for separation of powers.  *Id.*

Crist's state law constitutional claims are barred because the existing remedy of § 1983 would redress his injuries.  Counts II, III, and IV essentially claim that Crist was retaliated against for filing grievances.  If valid, these complaints certainly could be redressed through § 1983.  *See Maschner*, 899 F.2d at 944 (articulating the standard for reviewing retaliation claims under § 1983).  Counts V, VI, and VII allege that med techs at the Utah State Penitentiary were

deliberately indifferent to Crist's serious medical needs.  These claims are also remedied through § 1983. *See Martinez v. Beggs*, 563 F.3d 1082, 1087–88 (10th Cir. 2009) (citations and quotations omitted).  Finally, Crist invokes Article I section 9 independently, "as their behavior is outlined in this action."  All such "behavior," if actionable, would be redressed through § 1983.  *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

It does not matter if Article I section 9 and the Eighth Amendment have different "contours," so long as a plaintiff's injuries may be redressed under § 1983.  *Cavanaugh v. Woods Cross City*, No. 1:08-CV-32-TC-BCW, 2009 WL 4981591, at * 6 & n.8 (D. Utah Dec. 19, 2009) (unpublished op.).  Nor does it matter that a plaintiff's claims would ultimately be unsuccessful under § 1983.  *See, e.g.*, *Hoggan v. Wasatch Cnty.*, 2:10-CV-01204-DS, 2011 WL 3240510, at * 2 (D. Utah July 28, 2011) (unpublished op.).  Crist's injuries are redressable (though not recoverable) under § 1983; accordingly, all of Crist's claims under the Utah Constitution fail under the third *Spackman* prong, and must be dismissed.

## CONCLUSION

There is no genuine issue of material fact, and the Prison Officials are entitled to judgment as a matter of law on all Crist's claims.  Crist cannot establish that his due process rights were violated through the prison grievance procedure, as Crist has no right to the grievance procedure and, in any event, all grievances were handled properly.  Crist's First Amendment retaliation claims fail because Crist can establish no triable issue as to (a) his engaging in a protected activity, (b) an adverse action causing a person of reasonable firmness to discontinue the activity, and (c) but-for causation.  Crist's Eighth Amendment claims fail as to

Dr. Tubbs because, at most, Crist's claims are a disagreement with Tubbs's medical treatment, not allegations of deliberate indifference.  The remaining Eighth Amendment claims fail because Crist cannot prove any wanton infliction of pain or deliberate indifference.  At a minimum, Crist cannot demonstrate that any right—to prison grievances responded to on his terms, to his choice of medication, to have med techs schedule medical appointments for him, or to not being insulted by a prison guard—was "clearly established" at the time.  And, thus, qualified immunity shields the Prison Officials' conduct.

Crist's state constitutional claims are foreclosed because they are redressable under the Federal Constitution.  Crist's state law claims also fail because he cannot plead and prove all their essential elements, and because the Prison Officials are shielded with immunity.

For these reasons, the Prison Officials are entitled to summary judgment on all Crist's claims.

DATED this 24th day of October, 2011**.**

MARK L. SHURTLEFF
Utah Attorney General


/s/ David N. Wolf_____
DAVID N. WOLF
Assistant Utah Attorney General
Attorney for Defendants

## CERTIFICATE OF MAILING

I certify that on October 24, 2011, I electronically filed the foregoing **MEMORANDUM**

**IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, using the

Court's CM/ECF system and I also certify that a true and correct copy of the foregoing was sent

by United States mail, postage prepaid, to the following:

Damon Crist, USP #39345
Utah State Prison
PO Box 250
Draper, UT 84020
*Pro Se*

        /s/ Yvonne Schenk